# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**BROCK SMITH**, *et al.*,

   **Plaintiffs,**

          **Civil Action 2:09-cv-00954**

**vs.**          **Judge Michael H. Watson**
          **Magistrate Judge E. A. Preston Deavers**

**JERRY L. MALOON, II**, *et al.*,

   **Defendants.**


## ORDER and REPORT AND RECOMMENDATION

Plaintiffs, Brock and Chrystal Smith, bring this civil rights action under 42 U.S.C. § 1983, alleging that Defendants conspired under color of state law to violate their Fourth and Fourteenth Amendment rights when they made false statements and material omissions to the issuing judge to secure a search warrant.[1]  This matter is before the Court for consideration of Defendants' Motion to Dismiss (Doc. 8), Plaintiffs' Motion for Judicial Notice of State Court Pleadings and Transcript (Doc. 14), and  Defendants' Motion for Protective Order (Doc. 15). For the reasons that follow, Plaintiffs' Motion for Judicial Notice is **GRANTED IN PART and DENIED IN PART,** Defendants' Motion for Protective Order is **DENIED,** and the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED IN PART and DENIED IN PART.**

---

[1]Plaintiffs name in their Complaint the following Defendants in their individual and official capacities:  Jerry Maloon, an Assistant Attorney General and legal counsel to the Ohio Organized Crime Investigation Committee; David Hunt, a Sergeant in the Franklin County Sheriff's Office assigned to its Special Investigations Unit, and other unnamed individuals.  In addition, Plaintiffs name Lisa Smith, a Columbus Police Detective assigned to the Vice Squad, in her individual capacity.

## I.    BACKGROUND

According to the Complaint, Plaintiffs operated a legal business that provided and serviced a skill game of instant bingo tickets (Tic-Tac-Fruit amusement devices) and other amusement devices throughout Ohio.

Prior to the passage of Amended House Bill 177, Ohio law prohibited amusement machines if the results were determined largely or wholly by chance, but permitted machines where the outcome was not determined largely or wholly by chance.  In a series of cases before the Ohio courts, Tic-Tac-Fruit amusement devices were deemed skill-based amusement machines.  On November 9, 2006, in *Fraternal Order of Eagles v. Ohio Department of Public Safety*, 06-CVH11 14726, (Franklin County Court of Common Pleas), a state court granted declaratory and injunctive relief against the Ohio Department of Public Safety, enjoining it from seizing any Tic-Tac-Fruit amusement machines until further notice.  In the Summer of 2007, the Ohio Attorney General issued an emergency rule, pursuant to the Governor's Executive Order 2007-28S, "Implementing Rule Defining Skill-Based Amusement Machines and Unfair and Deceptive Practices in Consumer Transactions," which changed the definition of "skill-based amusement machine" to prohibit the award of cash prizes and limited merchandise prizes to a value of ten dollars.  The *Fraternal Order of Eagles* plaintiffs, however, secured declaratory and injunctive relief, striking down the emergency rule, which was affirmed on appeal.

On October 10, 2007, following an expedited legislative process, the Ohio House of Representatives passed Amended House Bill 177, which declared an emergency and incorporated most of the changes proposed in the Attorney General's Emergency Rule. Amended House Bill 177 changed the definition of skill-based amusement machine to exclude

machines that award cash, cash equivalents, or merchandise valued at more than ten dollars wholesale, and clarifying the regulatory authority for operation of skill-based amusement machines.  Thus, Amended House Bill 177 severely limited skill-based amusement games in Ohio.  On October 25, 2007, Governor Strickland signed House Amended Bill 177 into law.

 Prior to the passage of Amended House Bill 177, Defendants or their predecessors had been unsuccessful in their repeated attempts to limit the Tic-Tac-Fruit amusement games. According to the Complaint, Defendants spent many months on a task force which targeted Plaintiffs' Tic-Tac-Fruit amusement machines.  Plaintiffs maintain that after the state court enjoined the Ohio Department of Public Safety, Defendant Assistant Attorney General Maloon ceased his formal membership on that task force, but continued to conspire with other Defendants to secure and execute search warrants against Plaintiffs.  Specifically, Plaintiffs allege that Defendant Maloon advised other Defendants when a procedural barrier arose to securing the search warrants and later appeared before the issuing judge under the guise of appointed special counsel to the City of Columbus for the judge's one-day hearing.

On October 24, 2007, the day before Amended House Bill 177 took effect, the Columbus Division of Police, under the direction of the Ohio Attorney General, executed a series of search warrants on Plaintiffs' homes, businesses, and bank accounts.  According to the Complaint, to secure these warrants, Defendants conspired to provide the issuing judge with an affidavit containing false statements and material omissions.  Specifically, Plaintiffs allege that the search warrant affidavit failed to inform the issuing judge of the following information: the numerous cases either declaring Tic-Tac-Fruit machines lawful or dismissing prosecutions related to the machines; the temporary restraining order issued against the Ohio Department of Public Safety

prohibiting the seizure of Tic-Tac-Fruit machines; and the imminence of Amended House Bill 177.  Further, Plaintiffs allege that the affidavit misled the judge into believing that Tic-Tac-Fruit had been deemed a game of chance by an expert and that certain money transfers were profits from illicit gambling, when Defendants knew that the transfers actually reflected lawful payments for machines manufactured in China.

As a result of the warrant searches, the State seized Plaintiffs' property, froze their bank accounts, and disrupted both their business operations and their personal lives.  Plaintiffs allege that they have suffered and continue to suffer loss of property, emotional distress, and frustration.  On October 23, 2009, Plaintiffs filed the instant action.  On January 12, 2010, Defendants filed a Motion to Dismiss (Doc. 8), seeking dismissal on the basis of qualified immunity.  On March 26, 2010, Plaintiffs filed their Memorandum Contra (Doc. 17), and on April 8, 2010, Defendants filed their Reply (Doc. 19).  Plaintiffs filed a Surreply on April 26, 2010 (Doc. 24).  On March 8, 2010, Plaintiffs filed a Motion for Judicial Notice of State Court Pleadings and Transcript (Doc. 14).  Defendants did not oppose this motion.  On March 23, 2010, Defendants filed a Motion for Protective Order (Doc. 15), seeking an order that discovery not proceed until resolution of the Motion to Dismiss on basis of qualified immunity.  On March 25, 2010, Plaintiffs filed their Memorandum Contra (Doc. 16), and on April 8, 2010, Defendants their Reply (Doc. 20).

## II.    STANDARD FOR MOTION TO DISMISS

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although this pleading standard does not require " 'detailed factual allegations,' . . . [a]

4

pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' " is insufficient. *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.' " *Id*. (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. 1949.  In considering whether this facial plausibility standard is met, a Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party.  *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citations omitted).

## III.   DISCUSSION

In their Complaint, Plaintiffs allege that Defendants made false statements and material omissions to secure search warrants without probable cause.  Plaintiffs, therefore, assert that the execution of those warrants violated Plaintiffs' Fourth and Fourteenth Amendment right to be free from unreasonable search and seizures.  Defendants' Motion to Dismiss and their Motion for a Protective Order are premised upon their contention that they are entitled to qualified immunity.  Alternatively, Defendant Maloon seeks dismissal of the claims asserted against him on the basis of absolute prosecutorial immunity.

A.      **Qualified Immunity**

At this juncture, accepting Plaintiffs' factual allegations as true as this Court must at the

motion to dismiss stage, the undersigned finds that Defendants are not entitled to qualified

immunity because Plaintiffs have demonstrated that a constitutional right has been violated.

"Qualified immunity balances two important interests—the need to hold public officials

accountable when they exercise power irresponsibly and the need to shield officials from

harassment, distraction, and liability when they perform their duties reasonably." *Pearson v.

Callahan*, --- U.S. ----, ----, 129 S.Ct. 808, 815 (2009). "Under the doctrine of qualified

immunity, 'government officials performing discretionary functions generally are shielded from

liability for civil damages insofar as their conduct does not violate clearly established statutory

or constitutional rights of which a reasonable person would have known.' " *Phillips v. Roane

County*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982)). "[Q]ualified immunity applies regardless of whether the government official's error is a

mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.*

(internal quotation marks and citations omitted). The determination of whether a government

official is entitled to qualified immunity involves two inquiries. *Miller v. Sanilac County*, 606

F.3d 240, 247 (6th Cir. 2010). "First, viewing the facts in the light most favorable to the

plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the

right clearly established at the time of the violation?" *Id.* (internal quotation marks and citations

omitted). The Court need not consider these inquiries sequentially. *Jones v. Byrnes*, 585 F.3d

971, 975 (6th Cir. 2009) (citation omitted).

Defendants do not dispute that Plaintiffs had a clearly established right to be free from

unreasonable search and seizures under the Fourth Amendment.  *Cf. Vakilian v. Shaw*, 335 F.3d

509, 517 (6th Cir. 2003) ("An investigator may be held liable under § 1983 for making material

false statements either knowingly or in reckless disregard for the truth to establish probable

cause for an arrest.").  Thus, the issue of whether Defendants are entitled to qualified immunity

turns on whether or not Plaintiffs have demonstrated that a constitutional violation occurred.

The Fourth Amendment protects the "right of the people to be secure in their persons,

houses, papers and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.

The Fourth Amendment further provides that "no Warrants shall issue, but upon probable cause,

supported by Oath or affirmation . . . ."  (*Id*.)  Generally, in a civil rights action under 42 U.S.C.

§ 1983, officers or investigators "are entitled to rely on a judicially-secured arrest warrant as

satisfactory evidence of probable cause."  *Vakilian*, 335 F.3d at 517 (citation omitted).

"However, an officer or investigator cannot rely on a judicial determination of probable cause if

that officer knowingly makes false statements and omissions to the judge such that but for these

falsities the judge would not have issued the warrant."  *Id*. (internal quotation marks and

citations omitted).  Thus, "[t]o overcome an officer's entitlement to qualified immunity . . . a

plaintiff must establish: (1) a substantial showing that the defendant stated a deliberate falsehood

or showed reckless disregard for the truth and (2) that the allegedly false or omitted information

was material to the finding of probable cause."  *Id*. (citations omitted); *see also Hale v. Kart*, 396

F.3d 721, 726–28 (6th Cir. 2005) (applying two-part test).  In determining materiality, a court

considers the original affidavit, including the omitted portions, and strikes the

misrepresentations, to determine whether probable cause still exists.  *Hale*, 396 F.3d at 727;

*United States v. Wright*, 131 Fed. Appx. 471, 477 (6th Cir. 2005).

1.     **Substantial Showing of Deliberate Falsehood or Reckless Disregard of the Truth**

Although Defendants deny that they intended to mislead the issuing judge, for purposes of the instant Motion to Dismiss, Defendants concede that Plaintiffs have met their burden with respect to this first prong.  (Defs.' Mot. to Dismiss 4 n.2.)

a.     **Omissions**

Plaintiffs identify the following three omissions that they assert should have been disclosed to the issuing judge:

1.     The Tic-Tac-Fruit machines have been declared legal games of chance by numerous courts throughout Ohio;[2]

2.     On November 9, 2006, in *Fraternal Order of Eagles v. Ohio Department of Public Safety*, 06-CVH11 14726 (Franklin County Court of Common Pleas) a state court enjoined the Ohio Department of Public Safety from seizing any Tic-Tac-Fruit amusement machines until further notice;

and

3.     A new law, which will severely limit skill-based amusement games in Ohio, is about to be signed into law by Governor Strickland.

(*See* Pls.' Compl.)[3]

_____

[2]Defendants ask this Court to take judicial notice of *FOE Aerie 2171 Meigs v. Ohio Liquor Control Commission*, Case No. 06CV-5326, slip op. (Franklin County Court of Common Pleas Dec. 14, 2006), which found that the Tic-Tac-Fruit machines were not legal skill-based machines.  The Court takes judicial notice, pursuant to Rule 201 of the Federal Rules of Evidence, of this case.  Consequently, in analyzing the affidavit for purposes of determining materiality, the undersigned will amend the affidavit to reflect that courts considering the legality of Tic-Tac-Fruit machines are conflicted.

[3]Plaintiffs assert two additional omissions in their Memoranda Contra that were not alleged in the Complaint: (1) "Plaintiffs' associates were in the process of removing the games;" and (2) "Plaintiffs Brock and Crystal Smith did not own, operate, or have any connection with Ohio Skill Games and/or Tick Tac Fruit Machines."  (Pls.' Mem. Contra Defs.' Mot. to Dismiss 14.)  Because these additional omissions were not alleged in Plaintiffs' Complaint, they will not

Accordingly, to determine materiality, these omissions will be considered with the original affidavit to determine whether probable cause still exists.  *See Vakilian*, 335 F.3d at 517; *Hale*, 396 F.3d at 727.

        **b.**      **Misrepresentations**

Plaintiffs assert that the affidavit misled the issuing judge into believing that Tic-Tac-Fruit had been deemed a game of chance by an expert.  In addition, Plaintiffs assert that Defendants misled the issuing judge by implying that certain money transfers were profits from illicit gambling, when the transfers actually reflected lawful payment for machines manufactured in China.

Defendants counter that the statements relating to the transfers do not amount to misrepresentations because they are not deliberate falsehoods.  Instead, Defendants characterize the statements as "putting an incriminating gloss on facts the police [had] uncovered."  (Defs.' Mot. to Dismiss 13.)  The statements in dispute are:

> There were also suspicious checks made payable to Xu Xu Yu, Hua Jun, Yaping Xu, which were all cleared through The Bank of China.  *  *  *  There has been $6,027,000 wire transferred out of the United States, which is approximately 50% of the revenue generated by Ohio Skill Games.

(Compl., Ex. A.)  Accepting as true Plaintiffs' allegation that Defendant knew these international transfers reflected lawful payments, Defendants' reference to the transfers in the affidavit, labeling them as "suspicious," did amount to a misrepresentation.  For purposes of determining materiality, these misrepresentations will therefore be excised from the original affidavit to determine whether probable cause still exists.  *See Vakilian*, 335 F.3d at 517; *Hale*, 396 F.3d at

---

be considered for purposes of this Order.

727.

### 2.      Materiality to Probable Cause Determination

Under the second prong of the two-part test, if the omissions or misrepresentations were material to the finding of probable cause, a court must deny qualified immunity.  *Vakilian*, 335 F.3d at 517; *Hale*, 396 F.3d at 727.  Plaintiffs first urge the Court to find materiality based upon the testimony of Judge Anne Taylor, the judge who issued the seizure warrant.  Alternatively, Plaintiffs assert that the original affidavit, with the inclusion of the omitted portions and excision of the misrepresentations, lacks probable cause.

#### a.      Judge Anne Taylor's Testimony

Plaintiffs ask the Court to consider the testimony of Judge Anne Taylor, the issuing judge, concerning whether she viewed the alleged omissions and misrepresentations as material. Plaintiffs contend that this Court "may and should give deference to the determination of probable cause to the issuing judge . . . ."  (Pls.' Mot. for Judicial Notice 3.)  Because Judge Taylor's testimony is outside the pleadings, Plaintiffs filed a Motion to Take Judicial Notice of State Court Pleadings and Transcript (Doc. 14), requesting the Court to take judicial notice of the state court pleadings and the transcript (including Judge Taylor's testimony) in *Fraternal Order of Eagles Aerie 2171 Meigs, Inc., et al. v. Ohio Dept. of Public Safety*, 06CVH11-14726.

The Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion to Take Judicial Notice of State Court Pleadings and Transcript (Doc. 14).  Although judicial notice of the state court proceedings is proper, judicial notice of Judge Taylor's testimony is not.  The state court proceedings, which are a matter of public record, meet Federal Rule of Evidence 201(b)'s criteria.  Consequently, pursuant to Rule 201(d), upon Plaintiffs' request, the Court is

required to take judicial notice. The Court may take judicial notice of these state court proceedings without converting Defendants' Motion to Dismiss into one for summary judgment. *See Scarso v. Cuyahoga Cty. Dep't of Human Service*, 1990 WL 169645, at * 2 (6th Cir. Nov. 2, 1990) ("In determining the legal efficacy of plaintiff's complaint, the lower court properly took judicial notice of facts in the public record, specifically the records of state court proceedings.") (citations omitted); *U.S. v. Board of County Com'rs. of Hamilton Cty.*, No. 1:02-CV-00107, 2010 WL 200326, at *5 (S.D. Ohio Jan. 14, 2010) (taking judicial notice of state court complaint and public statements in consideration of a motion for judgment on the pleadings). Although the Court is required to take judicial notice of the proceedings, the Court is *not* permitted to take judicial notice of Judge Taylor's testimony because Rule 201(b) permits a court to take judicial notice only of facts "not subject to reasonable dispute . . . ." Fed. R. Evid. 201(b); s*ee also U.S. v. Bonds*, 12 F.3d 540, 553 (6th Cir. 1993) (declining to take judicial notice of National Research Committee Report where "there [was] considerable dispute over the significance of its contents"); *Ridenour v. Collins*, 692 F.Supp.2d 827, 830 (S.D. Ohio 2010) (declining to take judicial notice of testimony before the Ohio Senate Committee where the fact that the individuals testified was not in dispute, but the content of the testimony was disputed). Although the fact that Judge Taylor testified is undisputed, the content of her testimony, which Plaintiffs offer for the truth of the matters asserted, is highly disputed. Thus, the undersigned denies Plaintiffs' request to take judicial notice of Judge Taylor's testimony.

On this basis, Judge Taylor's testimony has no bearing on the Court's determination of materiality.

### b.    Consideration of the Corrected Affidavit

11

Considering the sworn affidavit submitted by Detective Smith, as amended to include the alleged omissions and strike the alleged misrepresentations, the undersigned concludes that the warrant is not supported by probable cause. An affidavit underlying the issuance of a warrant must provide information sufficient to establish "a substantial basis for determining the existence of probable cause." *United States v. Pruitt*, 458 F.3d 477, 480 (6th Cir. 2006) (citing *United States v. Leon*, 468 U.S. 897, 915 (1984)). Probable cause means "reasonable grounds for belief, supported by less than a *prima facie* proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). It exists where there is "a 'fair probability' that evidence of a crime will be located on the premises of the proposed search." *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005) (quoting *United States v. Bowling*, 900 F.2d 926, 930 (6th Cir.1990)). Here, considering the existence of the TRO at the time of the warrant application, the conflicted court rulings regarding the legality of the at-issue machines, and the imminency of Amended House Bill 177, an Ohio law which resolved the legality conflict, the undersigned concludes that there is insufficient evidence to support a finding of probable cause with respect to illegal gambling. Likewise, considering either the original or amended affidavit, the undersigned finds that there is insufficient evidence connecting Plaintiffs to the alleged "suspicious" transactions to support a finding of probable cause with respect to money laundering. Because the amended warrant is lacking of probable cause, the alleged omissions and misrepresentations were material. *See Vakilian*, 335 F.3d at 517; *Hale*, 396 F.3d at 727. Thus, Defendants are not entitled to qualified immunity. *See id*. Accordingly, the undersigned **RECOMMENDS** that Defendants' request for qualified immunity be **DENIED.**

**B.      Absolute Prosecutorial Immunity**

12

At this juncture, Defendant Assistant Attorney General Maloon is not entitled to absolute prosecutorial immunity with respect to his alleged conduct in connection with securing and executing the warrants.  The Supreme Court, in *Imbler v. Pachtman*, 424 U.S. 409 (1976), acknowledged that a criminal prosecutor is fully protected by absolute immunity when performing the traditional functions of an advocate.  *Id*. at 410, 430–31.  In determining whether absolute immunity is warranted, a court must "examine the nature of the function performed, not the identity of the actor who performed it."  *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) (internal quotation marks and citation omitted).  In *Kalina*, the Supreme Court considered "whether 42 U.S.C. § 1983 creates a damages remedy against a prosecutor for making false statements of fact in an affidavit supporting an application for an arrest warrant, or whether . . . such conduct is protected by 'the doctrine of absolute prosecutorial immunity.' "  *Id*. at 120.  In finding that such conduct is *not* protected by absolute immunity, the *Kalina* Court relied on *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993), quoting the following passage:

> "There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand.  *When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.*  Thus, if a prosecutor plans and executes a raid on a suspected weapons cache, he has no greater claim to complete immunity than activities of police officers allegedly acting under his direction."

*Kalina*, 522 U.S. at 126 (quoting *Buckley*, 509 U.S. at 273–74) (internal quotation marks and citations omitted) (emphasis added).  In the instant case, Plaintiffs allege that Defendant Maloon "conspire[d] with the other Defendants to secure and execute search warrants against Plaintiffs, even advising them when a procedural barrier arose to securing the search warrants, and later

13

appeared before the issuing Judge under the guise of appointed special counsel to the City of Columbus for the one day and one hearing she held."  (Compl. ¶ 24.)  Applying *Buckley* and *Kalina*, the undersigned finds that Defendant Maloon's conduct in connection with securing and executing the warrants and advising Defendants when a procedural barrier arose is not protected by absolute immunity.  Securing and executing a warrant are "investigative functions normally performed by a detective or police officer . . . ."  *Buckley*, 509 U.S. at 273–74.  Defendant Maloon, however, *is* entitled to absolute immunity with respect to his role as an advocate.  *See Kalina*, 522 U.S. at 127.  Accordingly, the undersigned **RECOMMENDS** that Defendant Maloon's request for absolute prosecutorial immunity be **GRANTED IN PART and DENIED IN PART.**

### III.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Judicial Notice (Doc. 14) is **GRANTED IN PART and DENIED IN PART** as set forth above.  Defendants' Motion for Protective Order (Doc. 15) is **DENIED.**  Finally, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss (Doc. 8) be **GRANTED IN PART and DENIED IN PART** as set forth above**.**

### IV.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED.**


July 13, 2010                                          /s/ *Elizabeth A. Preston Deavers*
                                                      Elizabeth A. Preston Deavers
                                                      United States Magistrate Judge

15